UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PAUL DANIEL IZZI, | ) | Case No. 1:18CV1641 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE PAMELA A. BARKER |
| | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | REPORT AND RECOMMENDATION |

Plaintiff Paul Daniel Izzi ("Izzi" or "claimant") challenges the final decision of

Defendant Commissioner of Social Security ("Commissioner"), denying his

applications for a period of disability, disability insurance benefits ("DIB"), and

Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security

Act, 42 U.S.C. §§ 416(i), 423, 1381 et seq. ("Act").  This court has jurisdiction

pursuant to 42 U.S.C. § 405(g).

The issue before the court is whether the final decision of the Commissioner

is supported by substantial evidence and, therefore, conclusive. For the reasons set

forth below, the undersigned recommends that the Commissioner's final decision

should be affirmed.

## I.  PROCEDURAL HISTORY

Izzi filed applications for SSI benefits on December 4, 2014, and for a period

of disability and DIB on December 15, 2014; the applications alleged disability

beginning October 20, 2011.  (R. 9, Transcript ("tr."), at 15, 230-231, 237-240, 260-

271.)  The claimant subsequently amended his onset date to December 31, 2012.  *Id.* at 15, 258.  Izzi's applications were denied initially and upon reconsideration.  (R. 9, tr., at 15, 94-108, 109-123, 124-125, 126-140, 141-155, 156-157.)  Thereafter, Izzi filed a request for a hearing before an administrative law judge (ALJ).  (R. 9, tr., at 182-183.)

The ALJ held the hearing on January 26, 2017.  (R. 9, tr., at 44-81.)  Izzi appeared at the hearing, was represented by counsel, and testified.  (*Id.* at 46, 47-71.)  A vocational expert ("VE") attended the hearing and provided testimony.  (*Id.* at 46, 71-78.)  On September 20, 2017, the ALJ issued her decision, applying the standard five-step sequential analysis to determine whether Izzi was disabled.  (R. 9, tr., at 15-34; *see generally* 20 C.F.R. §§ 404.1520(a) and 416.920(a).)  Based on her review, the ALJ concluded Izzi was not disabled.  *Id.* at 34.

The Appeals Council denied Izzi's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner.  (R. 9, tr., at 1-3.)  Izzi now seeks judicial review of that final decision, pursuant to 42 U.S.C. § 405(g).  The parties have completed briefing.  Izzi presents a single legal issue for the court's review: "The ALJ's analysis of treating physician Dr. Bell's medical opinions violated the treating physician rule."  (R. 12, PageID #: 1357.)

## II.  PERSONAL BACKGROUND INFORMATION

Izzi was born on October 4, 1987, and was 25 years old on the alleged disability onset date.  (R. 9, tr., at 32, 47, 230.)  Accordingly, Izzi was considered a younger individual age 18-44 for Social Security purposes.  *See* 20 C.F.R. §§

2

404.1563, 416.963.  He has at least a high school education, and is able to communicate in English.  (R. 9, tr., at 32, 48, 260, 262.)  Izzi's past work includes a composite job—collector and furniture rental consultant—and a retail store manager.  (R. 9, tr., at 72-73.)

### III.  RELEVANT MEDICAL EVIDENCE[1]

Disputed issues will be discussed as they arise in Izzi's brief alleging error by the ALJ.  Izzi filed applications for a period of disability and DIB and for SSI benefits in early December 2014 (R. 9, tr., at 15, 230-231, 237-240), and listed physical or mental conditions that limit his ability to work as: "pulmonary embolism, pulmonary infarction, blood clots, anxiety, peripheral neuropathy, [and] depression."  *Id.* at 261.  Izzi's assignment of error alleges that the ALJ did not properly weigh treating physician Dr. Bell's medical opinion(s).  (R. 12, PageID #: 1357.)

### A.  Dr. Bell

Izzi has been treating with Jerry C. Bell, D.O., since at least June 2013.  *See, e.g.*, R. 9, tr., at 23, 618-620, 956-959.  On June 6, 2013, Izzi presented to Dr. Bell to have an INR[2] (international normalized ratio) evaluation, and for a refill of

---

[1]  The summary of relevant medical evidence is not intended to be exhaustive.  It includes only those portions of the record cited by the parties and also deemed relevant by the court to the assignments of error raised.

[2]  An INR test is done to monitor a person's condition when taking a blood thinner (anticoagulant) medicine to prevent blood clots.

oxycodone.  (R. 9, tr., at 618, 956.)  Dr. Bell noted that Izzi had a history of multiple pulmonary embolisms, neuropathy, and fatigue.  *Id.*  Izzi rated his pain as 9/10, although the doctor indicated he was in "no acute distress," despite being fatigued and in obvious pain.  *Id.*  Izzi exhibited tenderness with palpitation of the lumbar region.  *Id.*  On examination, Izzi had full range of motion and no edema in his legs and feet, and the doctor assessed his arms and hands as unremarkable.  *Id.*  Dr. Bell assessed the claimant with pulmonary embolism and infarction, fatigue, myalgia, hypothyroidism, along with back pain, and he prescribed a regime of several medications.  *Id.*  Izzi continued to treat with Dr. Bell throughout the remainder of 2013 and through at least December 2016.  *See generally* R. 9, tr., at 23-26; R. 12, PageID #: 1347-1354.

During a follow-up appointment with Dr. Bell on February 24, 2014, Izzi reported improvement in leg pain and edema, and swelling of his feet and legs was better, after an increase in the dosage of Percocet earlier that month.  (R. 9, tr., at 23, 907, 913.)  By March 26, 2014, Izzi reported that his back pain was stable.  *Id.* at 24, 534.  On July 18, 2014, Izzi reported his pain as 0/10, and Dr. Bell indicated his hypertension and chronic pain were stable, continuing Percocet and other medications.  *Id.* at 23, 889.  The doctor noted that Izzi's peripheral neuropathy was stable on October 3, 2014, and August 18, 2015.  *Id.* at 23, 862, 886.

Izzi presented to Dr. Bell on December 8, 2015, for a follow-up appointment after an emergency room visit on December 3.  (R. 9, tr., at 1038; *see infra*, and *see generally id.* at 1119-1120, 1126, 1133.)  Dr. Bell noted that Izzi had a history of

4

neuropathic pain, chronic back pain, and a bulging disc. *Id*. at 1038. On examination, Izzi had lumbar paraspinal muscle tenderness and lumbrosacral region tenderness. *Id*. Dr. Bell refilled his Percocet. *Id*. at 1039. Claimant reported reduced pain on January 5, 2016, although he continued to have some cramps in his left leg. *Id*. at 1036.

On February 8, 2016, Dr. Bell completed three forms: A one-page form, entitled "Off-Task/Absenteeism Questionnaire," another one-page "Pain Questionnaire," along with a one-page form, "Medical Statement – Physical Abilities and Limitations." (R. 9, tr., at 1044-1046.) On the off-task form, Dr. Bell indicated that Izzi would be off-task at least 20% of the time at work, and his impairments or treatment would cause him to be absent from work more than four times per month. *Id*. at 1044. He noted Izzi's impairments included "neuropathy, seizure disorder, depression, [and] chronic back pain." *Id*. Dr. Bell indicated Izzi's "pain will sometimes cause distraction," and that the medication side effects cause "fatigue at times." *Id*. Izzi has chronic pain and neuropathy in his lower extremities from a bulging disc in his back. *Id*. The pain questionnaire also identified neuropathy, chronic back pain and chronic leg pain as sources of claimant's pain. *Id*. at 1045. Dr. Bell opined that Izzi's ability to do basic work-related activities is impacted because he is unable to remain in one position for extended periods, and would need to change positions frequently. *Id*. The doctor indicated that the claimant's pain would constantly interfere with his attention and concentration. *Id*.

5

On the medical statement, Dr. Bell indicated that Izzi was diagnosed with neuropathy and back pain. (R. 9, tr., at 1046.) The doctor marked that Izzi was capable of standing for less than 15 minutes at a time, and for less than one hour during a workday. *Id.* Izzi could sit for less than 15 minutes at a time, for four hours during a workday, lift ten pounds occasionally, five pounds frequently, never bend, stoop, balance, or work around dangerous equipment. *Id.* Dr. Bell opined that Izzi could occasionally perform fine or gross manipulation with his hands, occasionally raise his arms over his shoulders, and occasionally operate a motor vehicle. *Id.*

Dr. Bell marked that Izzi would occasionally need to elevate his legs above waist-level. (R. 9, tr., at 1046.) The doctor opined that Izzi suffered from severe pain, and would be absent due to his impairments more than three times per month. *Id.*

During a June 1, 2016 medication check with Dr. Bell, Izzi stated that his medications helped decrease his pain, and relieved anxiety, although he continued to have feet pain. (R. 9, tr., at 23, 1262.) The claimant reported no difficulty walking or with balance. *Id.* Izzi reported feeling well at an appointment with Dr. Bell on August 23, 2016; he reported taking medications (oxycodone and others) as directed. *Id.* at 23, 1259. Dr. Bell indicated that claimant appeared well, was in no acute distress, and his conditions of chronic leg pain and peripheral neuropathy were stable. *Id.* He did exhibit lumbar tenderness with palpitation, but there was no edema in his legs. *Id.*

6

B.  Other Medical History

Izzi had a physical consultative examination on November 14, 2013, conducted by Edward Carrillo, M.D.  (R. 9, tr., at 1174-1178.)  The claimant's blood pressure was well-controlled.  *Id.* at 1174.  On examination, Izzi had some lumbar tenderness, but normal sensation in his hands and feet.  *Id.* at 1175.  His heel-to-toe walk and his gait were normal.  *Id.*  Range of motion was normal in all areas. *Id.* at 1176.  Straight leg raise was negative on both sides, and he had decreased strength in both upper and lower extremities.  *Id.*  Dr. Carrillo assessed moderate limitations in standing, walking, lifting and carrying, due to neuropathy.  *Id.* at 1177.  He indicated slight limitations in sitting, bending, and reaching.  *Id.*  The doctor found that Izzi was able to perform all activities of daily living without help.  *Id.* at 1178.

State agency reviewing physician Michael Lehv, M.D., prepared a physical RFC assessment on May 28, 2015.  (R. 9, tr., at 102-104, 117-119.) Dr. Lehv determined Izzi was capable of light work, with the ability to stand or walk about six hours, and the ability to sit for six hours, of an eight-hour workday.  *Id.* at 102. Izzi's ability to push or pull was otherwise unlimited.  *Id.*  The doctor stated that Izzi can frequently climb ramps or stairs, but can never climb ladders, ropes, or scaffolds.  *Id.*  He can frequently stoop, kneel, crouch, or crawl, but needed to avoid all exposure to hazards, such as machinery and heights.  *Id.* at 103.

On reconsideration dated October 23, 2015, state agency reviewing physician Robert Wysokinski, M.D., largely concurred with Dr. Lehv's physical RFC, with the

exception that claimant could only occasionally crawl.  (R. 10, tr., at 133-135, 148-150.)

On December 3, 2015, Izzi went to the Lake Health Emergency Department for acute back pain, with an associated episode of bowel incontinence.  (R. 9, at 24, 1119-1120, 1126, 1133.)  He had no obvious neurological deficits on examination, had normal sensation and strength on both sides, and was able to walk with a steady gait under his own strength.  *Id.* at 1126.  An MRI of the lumbar spine showed no disc herniation, no significant foraminal or canal stenosis, but a mild disc bulge at L4/5 with mild bilateral foraminal narrowing.  *Id.* at 11389-1140.  He was discharged in stable condition several hours later.  *Id.* at 1123.

Izzi had a second physical consultative examination on December 19, 2015, conducted by Ardeshire Tamboli, M.D.  (R. 9, tr., at 1192-1197.)  His blood pressure was well-controlled; he reported myalgia and disc bulging, treated by a chiropractor and "problems walking and sitting long."  *Id.* at 1192-93.  On examination, Izzi had some lumbar tenderness, and abnormal sensation in his hands and feet.  *Id.* at 1194.  His heel-to-toe walk and his gait were normal.  *Id.*  Reflexes and range of motion were normal in all areas. *Id.* at 1194-1195.  Straight leg raise was positive for both legs at 45 degrees.  *Id.* at 1195.  Strength testing was normal in both arms, but slightly decreased for both legs.  *Id.* at 1196.  Dr. Tamboli assessed moderate limitations in standing, walking, sitting, and pushing or pulling.  *Id.*  The doctor found slight limitations in bending, reaching, and fine motor skills.  *Id.*  Dr. Tamboli

8

indicated that Izzi was limited to lifting no more than 20 pounds at a time, with frequent lifting or carrying up to 10 pounds. *Id.* at 1197.

On March 3, 2016, Izzi presented to John D. DeCato, DPM, for acute paronychia (skin infection) of the toe, ingrown nail, and a laceration of the foot. (R. 9, tr., at 1214.) The podiatrist scheduled him for foot surgery. *Id.* at 1215. At a pre-operative visit, Izzi reported that he was also having some back pain due to bulging discs, he refused to have back surgery, but was treating with a chiropractor. *Id.* at 1245. Izzi had a bunionectomy on March 15, 2016. *Id.* at 1242, 1245, 1249-1250. During a March 18, 2016 post-operative visit, Dr. DeCato reported Izzi was doing well. *Id.* at 1210.

## IV. ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in her September 20, 2017, decision:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2016.

2. The claimant has not engaged in substantial gainful activity since December 31, 2012, the alleged onset date (20 C.F.R. 404.1571 *et seq.* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: polyneuropathy, degenerative disc disease, seizure disorder, hypertension, major depressive disorder, post-traumatic stress disorder, and marijuana abuse (20 C.F.R. 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except can lift and carry 20 pounds occasionally and 10 pounds frequently; can only stand and walk for 2 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday; when sitting, would need to have the option to stand for approximately one minute every half hour (but would not need to leave the workstation); could occasionally climb stairs and ramps; no ladders, ropes or scaffolding; can frequently balance and occasionally stoop, kneel, crouch, and crawl; can reach in all directions and can frequently hand, finger, and feel; would not be exposed to unprotected heights, dangerous moving machinery, or commercial driving; should avoid open flame and unprotected bodies of water; should avoid extreme temperatures, humidity, and concentrated levels of pulmonary irritants; perform simple and routine tasks with simple short instructions, making simple decisions, and having few workplace changes with no fast-paced production requirements; can have superficial interaction (meaning no need for negotiations or confrontations, but rather brief and direct communication) with co-workers and supervisors, and occasional superficial interaction with the public.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on October 4, 1987, and was 25 years old, which is defined a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled  (20 CFR 404.1568 and 416.968).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2012, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(R. 9, tr., at 17, 18, 19, 21-22, 32, 34.)

## V.  DISABILITY STANDARD

A claimant is entitled to receive DIB or SSI benefits only when he establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. §§ 404.1505(a), 416.905(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001).  The Sixth Circuit has outlined the five steps as follows:

First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability.  20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment.  *Id.* §404.1520(a)(4)(ii).  Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled.  *Id.* §404.1520(a)(4) (iii).  Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled.  *Id.* §404.1520(a)(4)(iv).  Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other

11

work, in which case the claimant is not disabled. *Id.*
§404.1520(a)(4)(v).

The claimant bears the burden of proof during the first four steps, but
the burden shifts to the Commissioner at step five. *Walters v. Comm'r
of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004); *see
also* 20 C.F.R. § 416.920(a)(4).

## VI.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a
determination of whether the ALJ applied the correct legal standards, and whether
the findings of the ALJ are supported by substantial evidence. *Blakley v.
Commissioner of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009)*; Richardson v.
Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more
than a scintilla of evidence, but less than a preponderance of the evidence. *Wright
v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human
Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a
nature that a reasonable mind might accept it as adequate support for the
Commissioner's final benefits determination, then that determination must be
affirmed. *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial
evidence, regardless of whether this court would resolve the issues of fact in dispute
differently, or substantial evidence also supports the opposite conclusion. *Bass v.
McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545

12

(6th Cir. 1986).  This court may not try the case *de novo*, resolve conflicts in the

evidence, or decide questions of credibility.  *Wright*, 321 F.3d at 614; *Garner v.*

*Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  The court, however, may examine all the

evidence in the record, regardless of whether such evidence was cited in the

Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884

F.2d 241, 245 (6th Cir. 1989); *Hubbard v. Commissioner*, No. 11-11140, 2012 WL

883612, at *5 (E.D. Mich Feb. 27, 2012) (quoting *Heston*, 245 F.3d at 535).

## VII.  ANALYSIS

Izzi presents a single legal issue for the court's review, asserting that the ALJ

violated the treating physician rule when analyzing the medical opinions from his

treating physician Dr. Bell.  (R. 12, PageID #: 1357.)  The ALJ, according to Izzi,

failed to provide good reasons for assigning "limited weight" to Dr. Bell's medical

opinions.  *Id.*  The court finds Plaintiff's argument lacks merit, as explained below.

As an initial matter, it is well-recognized that an ALJ must generally give

greater deference to the opinions of a claimant's treating physicians than to non-

treating physicians.[3]  *Gayheart v. Commissioner*, 710 F.3d 365, 375 (6th Cir. 2013);

*Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544.  This doctrine, often referred to as

---

[3]  Revisions to regulations regarding the evaluation of medical evidence went into
effect on March 27, 2017, and apply to the evaluation of opinion evidence for claims
filed before March 27, 2017.  82 *Fed. Reg.* 5844-5884 (Jan. 18, 2017); *see, e.g.*, 20
C.F.R. § 404.1527 (2017) ("For claims filed ... before March 27, 2017, the rules in
this section apply.")  Plaintiff's claim was filed before March 27, 2017.

the "treating physician rule," is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treatment relationship with an individual are often well-equipped to provide a complete picture of the individual's health and treatment history.  *Id.*; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  The treating physician doctrine requires opinions from treating physicians to be given controlling weight when the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544.

In other words, treating physicians' opinions are only given deference when supported by objective medical evidence. *Vance v. Commissioner*, No. 07-5793, 2008 WL 162942, at *3 (6th Cir. Jan. 15, 2008) (citing *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003)).  Although the ALJ generally accords more weight to a treating source over those of a non-examining source, for example, the ALJ is not prohibited from adopting the findings of a non-examining source.  *See generally Ealy v. Commissioner*, 594 F.3d 504, 514-515 (6th Cir. 2010); *Smith v. Commissioner*, 482 F.3d 873, 875 (6th Cir. 2007).

Social Security regulations require the ALJ to give good reasons for discounting evidence of disability submitted by the treating physician(s). *Blakley*, 581 F.3d at 406; *Vance*, 2008 WL 162942, at *3.  Those good reasons must be supported by evidence in the case record, and must be sufficiently specific to make

14

clear to subsequent reviewers the weight assigned to the treating physician's opinion and the reasons for that weight.  *Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 406-407.  Even when a treating source's opinion is not entitled to controlling weight, an ALJ must still determine how much weight to assign to the opinion by applying specific factors set forth in the governing regulations.  *Gayheart*, 710 F.3d at 376; 20 C.F.R. §§ 404.1527(c), 416.927(c).  Although the ALJ is directed to consider the factors, the ALJ is not required to provide an "exhaustive factor-by-factor analysis" in her decision.  *Francis v. Commissioner*, No. 09-6263, 2011 WL 915719, at *3 (6th Cir. March 16, 2011).  In some cases, even a "brief" statement identifying the relevant factors has been found adequate to articulate "good reasons" to discount a treating physician's opinion.  *Allen v. Commissioner*, 561 F.3d 646, 651 (6th Cir. 2009).

The ALJ's underlying decision considered Dr. Bell's February 2016 opinion and gave it limited weight.  (R. 9, tr., at 30-31, citing *id.* at 1044-1046 (Exhibit 17F.) The ALJ stated:

> Limited weight is afforded to the assessment of Dr. Bell that outlined the need for a sit/stand option, as well as no exposure to hazards (17F). The evidence, however, does not support the level of standing, walking, and sitting limitations alleged.  For example, the claimant consistently showed no gait deficits, to include intact ability to heel and toe walk, and did not use an assistive device to walk (4F/2-10, 21F, 23F, 24F, 26F, 30F/6).  There are no consistent findings of positive straight leg raises, and his reflexes were symmetrical and intact (20F/1-2, 24F, 32F/2-6).

*Id.*

Izzi argues that the ALJ erred in assessing Dr. Bell's opinion by not addressing the "Off-Task/Absenteeism Questionnaire" as a separate opinion; and, he contends, that failure to address an opinion is grounds for reversal under *Blakley*.  (R. 12, PageID #: 1358-1359, citing *Blakley*, 581 F.3d at 407-408.)  In *Blakley*, the Sixth Circuit noted that the ALJ had "placed nothing on the record indicating that she considered the opinion of Dr. Kiefer as a treating physician." *Blakley*, 581 F.3d at 407.  Finding error, the court asserted that the doctor's opinion should have been given controlling weight, absent good reasons, but the doctor "is not mentioned anywhere in the ALJ's opinion." *Id.* at 408.  Such is not the case before this court.

Here, the ALJ's decision included numerous citations to the claimant's treatment history with Dr. Bell between 2013 to 2016 (R. 9, tr., at 23-24), evidencing the treatment relationship and the length of that relationship, and further provided a specific citation to the doctor's opinion,[4] although the decision did not explicitly identify Dr. Bell as Izzi's treating physician.  (R. 9, tr., at 30-31, citing "Exhibit 17F," which is, tr., at 1043-1046.)  Claimant seeks to characterize the three

---

[4]  Exhibit 17F contains Dr. Bell's opinions in three one-page documents entitled: "Off-Task/Absenteeism Questionnaire," "Pain Questionnaire," and "Medical Statement-Physical Abilities and Limitations."  (R. 9, tr., at 1043-1046.). In addition to the ALJ specifically citing Exhibit 17F while assessing Dr. Bell's opinion (R. 9, tr., at 30), the ALJ discussed it earlier in the decision (*id.* at 25-26), and also stated at the hearing that "I was looking at Exhibit 17F," which counsel had characterized at the hearing as "three questionnaires" (*id.* at 78).

one-page documents comprising the doctor's opinion as three separate opinions (R. 12, PageID #: 1354). Izzi also contends that "it is unclear whether the ALJ even knew of the existence of the "Off-Task/Absenteeism Questionnaire," and that merely citing to the entire exhibit is insufficient. (R. 14, PageID #: 1379.) Izzi's entire argument is based upon the contention that the ALJ failed to consider Dr. Bell's opinion contained in that one-page "Off-Task/Absenteeism Questionnaire." (R. 12, PageID#: 1358.) Aside from asserting that the ALJ failed to consider that document, Izzi does not meaningfully argue that the ALJ's decision concerning Dr. Bell's opinion lacked good reasons.

While the ALJ must consider all the evidence in the record, there is no requirement that the ALJ discuss every single piece of evidence. *See, e.g.*, *Atkinson v. Astrue*, No. 09-1369, 2010 WL 2977593, at *3 (10th Cir. July 29, 2010); *Thacker v. Commissioner*, No. 02-6138, 2004 WL 1153680, at *3 (6th Cir. May 21, 2004). Moreover, Dr. Bell's opinion consists of only three pages. (R. 9, tr., at 1044-1046.) The three pages, each signed by Dr. Bell on the same date, were submitted by counsel in the record as a single enclosure (R. 9, tr., at 1043), with contiguous pagination.[5] Exhibit 17F in total consists of (1) counsel's single-page cover letter,

---

[5] This court pauses to note that it may examine all the evidence in the record, regardless of whether such evidence was cited in the decision. *See Walker*, 884 F.2d at 245; *Hubbard*, 2012 WL 883612, at *5. To that end, numerous courts have found physicians' opinions that largely consist of one word answers, circles, and checkmarks, as did much of the doctor's opinion here, constitute "weak evidence at best." *Hernandez v. Commissioner*, No. 15-1875, 2016 WL 1055828, at *4 (6th Cir. Mar. 17, 2016); *see also Shepard v. Commissioner*, No. 17-1237, 2017 WL 4251707, at *4

17

which identifies two enclosures as follows (R. 9, tr., at 1043): (a) "Jerry C. Bell, D.O., completed an Off-Task/Absenteeism Questionnaire, Pain Questionnaire, and Medical Statement – Physical Abilities and Limitations dated 02/08/16," (the three pages at issue, R. 9, tr., at 1044-1046), and (b) licensing information for Dr. Bell (R. 9, tr., at 1047-1048).  This court finds that the ALJ's decision specifically addressed Dr. Bell's opinion in Exhibit 17F, and offered sufficient reasons to discount the doctor's opinion.

The court, therefore, finds that the ALJ supplied good reasons for the weight assigned to Dr. Bell's opinion, supported by evidence in the case record, and sufficiently specific to make clear the weight assigned to the opinion, and the reasons for that weight.  *Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 406-407.

---

(6th Cir. Sept. 26, 2017); *Ellars v. Commissioner*, No. 15-4039, 2016 WL 2610234, at *2-*3 (6th Cir. May 6, 2016); *Bayes v. Berryhill*, No. 3:16CV02822, 2018 WL 791323, at *3 (N.D. Ohio Feb. 8, 2018), *aff'd*, 757 Fed. Appx 436 (6th Cir. 2018); *Toll v. Commissioner*, No. 1:16CV705, 2017 WL 1017821, at *4 (W.D. Mich. Mar. 16, 2017); *Denham v. Commissioner*, No. 2:15CV2425, 2016 WL 4500713, at *3 (S.D. Ohio Aug. 29, 2016).  Nevertheless, the court foregoes such an analysis because the Commissioner has not asserted Exhibit 17F constitutes a deficient check-box opinion; rather, this decision focuses on the arguments raised by the parties.

## VIII.  CONCLUSION

For the foregoing reasons, the court finds that the ALJ's decision is based on substantial evidence in the record, as outlined in his findings and supported by medical evidence.  Accordingly, that decision should be affirmed.

s/ David A. Ruiz
David A. Ruiz
United States Magistrate Judge

Date:  July 19, 2019

19